# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RICHARD ADAMIK,

        Plaintiff,

    v.

JASON MOTYKA, et al.,

        Defendants.

No. 12 C 3810

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Adamik filed this civil rights case under 42 U.S.C. § 1983 against defendants Officer Jason Motyka, Officer Richard Tunzi, and Sergeant Robert Rubio for excessive force and failure to intervene. Adamik also sued defendant City of Chicago for indemnification. Currently before the Court are: (1) Adamik's post-trial petition for attorney's fees [191]; and (2) Adamik's motion to supplement attorney's fees following a settlement on appeal [239]. For the following reasons, the Court grants Adamik's petition [191] in part and awards Adamik's counsel $310,377.21 in fees, including prejudgment interest. The Court grants Adamik's motion to supplement [239] and sets a briefing schedule on a supplemental petition.

## Background

In this lawsuit, Adamik challenged Motyka, Tunzi, and Rubio's use of force and failure to intervene during an interview following a traffic stop on May 22, 2010. Adamik claimed he was the victim of an unprovoked attack by defendants during the

interview, resulting in a fractured rib, a ruptured spleen, and internal bleeding. The defendants denied the attack, testifying that Adamik must have hurt himself when struggling against defendants' efforts to restrain him.

On November 2, 2015, the jury returned a verdict in favor of Adamik on two claims: (1) his excessive force claim against Tunzi and (2) his failure to intervene claim against Rubio. R. 141. The jury found Motyka not liable. *Id.* The jury awarded Adamik $92,200.91 in compensatory damages, $6,000 in punitive damages against Tunzi, and $6,000 in punitive damages against Rubio. *Id.* The compensatory damages award covered approximately the cost of Adamik's medical bills. Adamik did not recover the additional $100,000 to $200,000 he requested in compensatory damages for pain and suffering.

On November 30, 2015, defendants moved for judgment as a matter of law and for a new trial. R. 149. On March 18, 2016, Adamik filed a fee petition seeking $449,885.45 in attorney's fees and $8,310 in expenses pursuant to the fee-shifting statute for civil rights cases, 42 U.S.C. § 1988. R. 191 at 1; R. 191-1. In his reply in support of his fee petition, Adamik amended his request to seek $415,143.30. R. 199 at 2. On April 21, 2016, Adamik's counsel sent a second fee petition to defense counsel seeking additional fees in the amount of $50,631.70 and asked to schedule a meet and confer. R. 200 at 2. On May 19, 2016, the Court granted defendants' motion to stay briefing on Adamik's second fee petition until defendants' post-trial motions were decided. R. 203.

The Court denied defendants' post-trial motions on September 30, 2016. R. 213. That same day, the Court entered an order granting in part and denying in part Adamik's fee petition, indicating that a written order would follow. *Id.* On October 26, 2016, defendants filed a notice of appeal. R. 215. On October 31, 2016, this Court entered judgment against the City of Chicago on Adamik's indemnification claim. R. 222. The parties subsequently settled the case (but not the attorney's fees), and defendants voluntarily dismissed their appeal. R. 235.

On November 1, 2017, defendants filed a motion for an agreed order awarding costs and expenses to Adamik's counsel in the amount of $20,374.18. R. 237. The motion explained that the parties settled Adamik's requests for both costs and nontaxable expenses, including the $8,310 in expenses originally sought in Adamik's fee petition. R. 237 at 2. This Court granted that motion and ordered the City of Chicago to pay $20,374.18 in costs and expenses. R. 240. On November 2, 2017, Adamik filed a motion for supplemental attorney's fees of $60,257.20 for post-trial litigation and appellate mediation. R. 239.

## Analysis

The Civil Rights Attorney's Fees Awards Act of 1976 provides that a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee" in suits brought under certain federal civil rights statutes, including 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). "[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."

*Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The parties agree that Adamik is a prevailing party in this case.

"[I]n view of [its] superior understanding of the litigation," this Court has considerable "discretion in determining the amount of a fee award." *Id.* at 437. The "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. This calculation is commonly known as the "lodestar." *E.g.*, *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). "The party seeking an award of fees" has the initial burden to "submit evidence supporting the hours worked and rates claimed" in support of the lodestar. *Hensley*, 461 U.S. at 433. "[T]here is a strong presumption that the lodestar figure is reasonable." *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010). That presumption can be overcome "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a fee." *Id.*

Adamik's fee petition seeks $415,143.30 in fees incurred through the conclusion of trial. The Court first addresses the appropriate lodestar calculation, including the reasonableness of the hourly rates claimed and the hours totals. Second, the Court addresses defendants' argument for an overall reduction of the lodestar based on Adamik's degree of success. Third, the Court addresses Adamik's request for prejudgment interest. Fourth, the Court addresses Adamik's motion to supplement his attorney's fees petition to obtain $60,257.20 for post-trial litigation and appellate mediation.

## I.     Lodestar Calculation

### A.     Hourly Rates

The hourly rate component of the lodestar "must be based on the market rate for the attorney's work." *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). "The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* "[O]nce an attorney provides evidence establishing [the] market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Id.* at 659-60.

#### 1.     Edward Genson

Adamik's counsel Edward Genson originally sought a rate of $700 per hour, but he reduced the rate sought to $550 per hour in Adamik's reply brief. R. 199 at 2. In support of his requested rate, Genson attaches an affidavit setting forth his general academic background and legal honors. R. 191-4. Genson also attaches a client engagement letter (submitted to the Court in hard copy only to preserve confidentiality) offering Genson's legal services at an hourly rate of $775, but not describing the kind of work performed. *See* R. 191 at 18. And Genson attaches an affidavit from Jon Loevy, a prominent civil rights attorney in Chicago, attesting to Genson's national reputation, Loevy's own rates of $495-$505 per hour awarded in civil rights litigation, and other attorneys' rates in various sorts of high-profile litigation. R. 191-5.

"Defendants do not dispute that Mr. Genson is a nationally renowned criminal defense attorney," but they contest his requested rate because it is higher than Loevy's awarded rates and because Genson has more "limited experience in representing plaintiffs in Section 1983 cases." R. 195 at 4. Defendants advocate instead for a rate of $455 per hour. *Id.*

Defendants correctly point out that the relevant reference point for determining a market rate is the amount charged by "attorneys of comparable skill, experience, and reputations charge *for similar work*." *Pickett*, 813 F.3d at 640, 645-46 (emphasis added); *accord Gautreaux*, 491 F.3d at 659 ("market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients *for the type of work in question*") (emphasis added); *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) ("the reasonable fee is capped at the prevailing market rate *for lawyers engaged in the type of litigation in which the fee is being sought*") (emphasis in original).

Genson's affidavit and engagement letter do not establish his market rate for the type of work in question (*i.e.*, civil rights work). But Loevy's affidavit does establish the current market rate for civil rights work by a highly-regarded trial lawyer. Loevy's affidavit (R. 191-5) states that his rate has recently been adjudicated at $505 per hour, *Fox ex rel. Fox v. Barnes*, 2013 WL 4401802, at *3-4 (N.D. Ill. Aug. 15, 2013), and $495 per hour, *Jimenez v. City of Chicago*, 2012 WL 5512266, at *2 (N.D. Ill. Nov. 14, 2012). Loevy is "well known in this district for having obtained a number of multi-million dollar jury verdicts in § 1983 cases," which means that he

"clearly qualifies for an hourly rate as high as any other attorney handling § 1983 cases, and probably higher than most." *Duran v. Town of Cicero*, 2012 WL 1279903, at *20 (N.D. Ill. Apr. 16, 2012); *see also* R. 195 at 6-7 (collecting cases). Loevy's rate is therefore "next-best evidence" of an appropriate market rate for Genson. *See Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014) ("rates awarded to similarly experienced Chicago attorneys in other civil-rights cases in the district" are "next-best evidence . . . properly considered after the court f[inds] insufficient evidence of the attorneys' actual market rate").[1]

The Court further finds that it is appropriate to award Genson the low end of Loevy's rate range as reflected in his affidavit ($495 per hour) instead of the high end of that range ($505 per hour). Although Genson maintains a very successful criminal defense practice and has some civil rights experience (*see* R. 199 at 11 n.8), he has not attained the same level of recognition for civil rights work as Loevy. *See, e.g.*, *Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1041 (N.D. Ill. 2013) ("Loevy [is] an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field."). And an attorney's "work in non-civil rights litigation translates to something less than the equivalent amount of civil rights litigation experience." *Jimenez*, 2012 WL 5512266, at *3; *accord Cooper*, 97 F.3d at 920 ("Suppose the best lawyer in the United States

---

[1]    By contrast, the hourly rates Loevy cites in his affidavit (R. 191-5) of between $795 and $1,800 for cases on matters of national importance, some in different jurisdictions and some involving non-civil rights issues, are not evidence of the prevailing market rate in this fairly routine civil rights case in Chicago.

charges $1,000 an hour and is worth every cent of it. Only his practice has nothing to do with civil rights; he is, let us say, an antitrust trial lawyer. He is requested to represent an indigent civil rights plaintiff, and he does so, giving the case his best shot and, despite his inexperience in civil rights litigation, doing a superb job. Would he be entitled to an award of fees at the rate of $1,000 an hour? Not if the judge could have procured competent counsel for the plaintiff at a much lower rate."). This is particularly true because Genson's work on the case did not showcase his expertise as a trial lawyer. Genson played a relatively minor role at trial; he did not examine Adamik or any of the three defendants, did not put on the expert witness, and performed none of the three legal arguments. In light of these factors, the Court awards Genson the low end of the documented rates awarded to Loevy: $495 per hour.

### 2. Blaire Dalton

Adamik's lead trial counsel Blaire Dalton originally sought a rate of $315 per hour, but she reduced her requested hourly rate to $310.00 in Adamik's reply brief. R. 199 at 2. Dalton supports this rate through affidavits pointing to other civil rights cases in which attorneys with similar experience who played a similar role in the case were awarded commensurate rates. *See* R. 191-9.

Defendants urge the Court to award Dalton historical rates for her work, with the rate increasing for each year of her work on the case. As defendants acknowledge, however, the choice to award current rates or historical rates plus interest is within the Court's discretion. *See Pickett*, 813 F.3d at 647 ("To account for the delay, a district court has the discretion to choose one of two methods to calculate the fee award. It

8

may calculate the fee award for services rendered in prior years using the attorney's current hourly billing rate. Or it may also calculate the fee award using the hourly rate the lawyer charged at the time the lawyer performed the services for the client (the 'historical rate') and add interest to that amount."). Instead of wading into the parties' factual disputes about Dalton's relative experience each year, the Court exercises its discretion to award Dalton her current rate. *See, e.g.*, *Fox*, 2013 WL 4401802, at *3 (rejecting challenge to "the use of current hourly rates to compensate for work performed over the past several years, when the attorneys had less experience" because "the Seventh Circuit has explicitly endorsed that practice to compensate for the delay in payment in civil rights cases") (citing *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 744-45 (7th Cir. 2003)).

The current rate is determined at the time the petition is filed. *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1018 (N.D. Ill. 2009). Dalton graduated in 2011, and Adamik filed its fee petition in 2016. As such, the Court agrees with Adamik that Dalton's market rate is that of civil rights attorneys in their fifth year. Dalton has appropriately established that market rate by citing examples of rates awarded to fifth- or sixth-year attorneys in civil rights cases. *See* R. 191-9 (affidavits in support of Dalton's rate, including an affidavit from civil rights attorney Elizabeth Mazur from Loevy & Loevy about rates awarded to fifth- and sixth-year Loevy & Loevy attorneys).

The Court further finds that defendants have failed to show a "good reason why a lower rate is essential." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d

9

1307, 1313 (7th Cir. 1996). Even though Dalton has less overall civil rights experience than some of the fifth-year attorneys in the cases she cites, the Court finds that Dalton's lead role throughout the case and at trial entitles her to a commensurate rate. Dalton's substantial work on the case included preparing and defending every deposition and leading the trial team (including by examining all defendants and Adamik's expert). *See* R. 191 at 22. Dalton's performance at trial was outstanding, and it evidenced an attorney of seemingly greater than five years experience. Moreover, although the Court does not place heavy reliance on the Laffey Matrix,[2] it notes that the adjusted Laffey Matrix would justify a rate of $406 per hour for Dalton. For all of these reasons, the Court awards Dalton her requested rate of $310 per hour.

### 3. Matthew Robison

Defendants do not contest Adamik's counsel Matthew Robison's requested rate of $350 per hour, and the Court finds this to be an appropriate current market rate for Robison. *See* R. 191-7 (attorney affidavits in support of Robison's claimed rate).

### 4. Megan Tomlinson

---

[2]    The Laffey Matrix is a table of hourly rates prepared by the United States Attorney's Office in the District of Columbia for attorneys in the Washington, D.C. area. The Seventh Circuit has not explicitly endorsed the use of the Laffey Matrix, and has "expressed some skepticism about applying the *Laffey* Matrix outside of Washington, D.C." *Montanez*, 755 F.3d at 554. Nevertheless, the Seventh Circuit has "left it to trial judges to exercise their discretion in evaluating [the Laffey Matrix's] usefulness in any particular case," *id.*, and courts in this district have accepted it as evidence of a reasonable hourly rate. *See Hadnott v. City of Chicago*, 2010 WL 1499473, at *7 (N.D. Ill. Apr. 12, 2010) (citing cases and concluding "that the Laffey Matrix is 'satisfactory evidence' of the prevailing rate, so that the burden shifts to opposing counsel to show why a lower rate is essential").

Adamik's counsel Megan Tomlinson, who worked on this case for about five months during its early stages in 2012 and 2013, requests a rate of $250 per hour. Defendants urge the Court to use historical rates for Tomlinson. The Court rejects that argument for the same reasons it rejected it with respect to Dalton.

The Court finds that Tomlinson has provided satisfactory evidence that $250 per hour is a reasonable, current market rate for an attorney like Tomlinson, who was in her third year when she finished working on this case and would have been a sixth year at the time the petition was filed. *See* R. 191-10; *Warfield v. City of Chicago*, 733 F. Supp. 2d 950 (N.D. Ill. 2010) ($250 per hour to second-year attorney in civil rights case); *Gibson v. City of Chicago*, 2012 WL 2775025, at *4-*5 (N.D. Ill. July 6, 2012) ($275 per hour to third-year attorney in civil rights case); *see also* R. 191 at 36 (Laffey Matrix supports a rate of $406 for fourth to seventh year lawyers in 2016). The Court further finds that defendants have failed to show a "good reason why a lower rate is essential." *People Who Care*, 90 F.3d at 1313. The Court therefore awards Tomlinson her requested rate of $250 per hour.

### 5. Vadim Glozman

Adamik's counsel Vadim Glozman requests an hourly rate of $100 for the work he performed as a law clerk on this case prior to being admitted as an attorney. Adamik's original petition sought a rate of $200 per hour for work Glozman performed as a new attorney in 2014 and 2015, but on reply, Adamik agreed to cut many of those hours and now seeks to recover for Glozman's time only at a $100 hourly rate. *See* R. 199-1 at 1. Defendants do not contest the hourly rate of $100 for law clerk work, and

11

the Court finds that rate reasonable. *See, e.g.*, *Smith v. Altman*, 2015 WL 5675376, at *6 (N.D. Ill. Sept. 21, 2015) (law clerk hourly rate of $100 reasonable); *Reid v. Unilever United States, Inc.*, 2015 WL 3653318, at *19 (N.D. Ill. June 10, 2015), *aff'd sub nom. Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) (same).

### 6. Alana De Leon

Alana De Leon likewise requests a rate of $100 per hour for law clerk work, which defendants do not contest, and which the Court has already found reasonable.

### 7. Rates for Law Clerk Tasks

The Court agrees with defendants—and Adamik concedes in its reply brief (R. 199 at 3)—that attorneys performing law clerk tasks should be awarded $100 per hour, and not an elevated $125 hourly rate as originally requested by Adamik. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it."); *O'Brien v. Panino's, Inc.*, 2011 WL 3610076, at *2 (N.D. Ill. Aug. 16, 2011) ("The Seventh Circuit has made clear that the court cannot award fees at attorneys' rates for work that does not require that level of skill.") (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999)); *Smith*, 2015 WL 5675376, at *7-8 ($100 per hour rate appropriate for attorneys in § 1983 case performing paralegal tasks). Adamik has made appropriate adjustments to the rates

claimed for Tomlinson's, Robison's, and Dalton's entries for paralegal-type work. *See* R. 199-2 at 4; R. 199-3 at 1-14; R. 199-4 at 1-43.

### B. Hours Worked

The hours worked component of the lodestar excludes hours "not reasonably expended," including "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434. "[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon*, 175 F.3d at 553. The Court also may reduce the hours calculation "[w]here the documentation of hours is inadequate." *Hensley*, 461 U.S. at 433.

Defendants' response to Adamik's fee petition raises seven principal issues with Adamik's counsel's claimed hours: (1) overstaffing, leading to excessive or duplicative entries; (2) excessive hours spent on communications; (3) hours spent on tasks unnecessary to the litigation; (4) vague and insufficiently documented entries; (5) hours spent on administrative or clerical tasks; (6) hours expended by law clerks; and (7) hours billed for paralegal tasks at an attorney rate. R. 195 at 32-42. Defendants also attach to their response line-item objections to the billing records for each of Adamik's attorneys. R. 195-9; R. 195-10; R. 195-17; R. 195-18; R. 195-20.

In reply, Adamik agreed to a number of hours reductions based on defendants' objections. Adamik attaches to its reply a set of defendants' remaining line-item objections. R. 199-2; R. 199-3; R. 199-4. Adamik lodges a general opposition to these line-item objections and urges the Court to disregard them entirely. As Adamik

summarizes, "[a] cursory review of the billing records show that Defendants lodge multiple objections to dozens upon dozens of entries," frequently asserting "three to five objections—or more—for the same entry" in short (often one-word) phrases. R. 199 at 20. Adamik is correct that objectors should not "'shift[] to the court . . . the objector's responsibility . . . to meaningfully explain why each item claimed to be unreasonable or otherwise noncompensable should be disallowed.'" *Bd. of Trustees of the Health & Welfare Dep't of the Constr. & Gen. Laborers' Dist. Council of Chicago & Vicinity v. Allison Enterprises, Inc.*, 2016 WL 4397972, at *5 (N.D. Ill. Aug. 18, 2016) (quoting *Nilssen v. General Elec. Co.*, 2011 WL 633414, at *10 (N.D. Ill. Feb. 11, 2011)). Thus, "one-word notations on . . . attorney invoices" such as "Vague," "Block," "Redundant," "Excessive," or "Unnecessary," are inappropriate. *Id.*

Adamik is therefore correct that "the Court is not obliged to scour the invoices to decipher [defendants'] objections." *Id.* But like the *Bd. of Trustees* court, the Court "has nevertheless endeavored to" review the line-item objections (*id.*), with a primary focus on the objections that defendants have taken the time to explain in their response. The Court is persuaded with respect to two of defendants' objections.

*First*, although the Court does not agree with defendants that the case was generally overstaffed—as Adamik notes, at most points in the litigation, only one or two attorneys were doing most of the billing—the Court agrees with defendants that the trial itself was overstaffed. It is the rare case that requires three attorneys at trial, and a one-week civil rights trial is not that case. Just because three of Adamik's

14

attorneys attended the trial all day does not mean that three attorneys' attendance was reasonable.

As noted above, Genson in particular played a relatively minor role at trial. He performed the direct examination of two relatively short witnesses. He did not examine Adamik, any of the three defendants, or the expert witness. He also performed none of Adamik's three arguments. The Court believes that Genson attended the entire trial primarily due to his relationship with Adamik and his family. Yet Genson billed a total of 56 hours for five days of trial. *See* R. 199-2 at 2. The Court finds this amount excessive and reduces Genson's compensable hours at trial to 30 (six hours per day), an amount that the Court believes fairly compensates him for his actual role at trial.

*Second*, the Court agrees with defendants that a number of Genson's, Tomlinson's, and Glozman's billing entries are too vague for the Court to understand. "When a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Obrycka v. City of Chicago*, 2013 WL 1749803, at *4 (N.D. Ill. Apr. 23, 2013) (citing *Harper v. City of Chicago Heights,* 223 F.3d 593, 605 (7th Cir. 2000)).

The Court strikes based on vagueness Genson's entries for "Meeting with attorneys," "Meeting with attys re: deposition," "Meeting with atty; client," and "Meeting with client; atty re: deposition." These entries both fail to specify the attorneys and deposition at issue and fail to provide sufficient context for the Court

15

to understand them. *See* R. 199-2 at 1-2; *see, e.g.*, *Bd. of Trustees*, 2016 WL 4397972, at *6 (striking hours with "descriptions relaying merely 'Review litigation issues,' 'Review case materials and filings,' or 'Review litigation reports'" as overly vague). In total, these entries amount to 9.25 hours. Adding these 9.5 hours to the 26 hours the Court deducted from Genson's trial hours, the Court deducts a total of 35.25 hours from Genson's 105 claimed hours. *See* R. 199 at 2. This results in 69.75 total compensable hours for Genson.

On the same basis, the Court strikes Tomlinson's entries for "Meeting with attorney re: discovery," "Meeting with attorney re: objections," "Meeting with attorney re: report," "Meeting with attorney client re: discovery," "Meeting with attorney re: documents," "Meeting re: correspondence," and "Meeting with attorney re: correspondence." R. 199-2 at 4-6. These entries problematically fail to identify the attorney, discovery, objections, report, documents, and correspondence at issue, and further fail to provide the Court with sufficient context to understand them. In total, these entries amount to 4.5 hours (all of which are attorney-rate hours as opposed to agreed paralegal-rate hours). Deducting these 4.5 hours from Tomlinson's total of 62 attorney-rate hours (R. 199-2 at 6) leaves Tomlinson with 57.5 hours of compensable attorney-rate time, as well as 1.5 hours of compensable paralegal-rate time.

The Court also strikes as overly vague Glozman's hours for "CR summaries," "Meeting with attorneys; re: deposition; prepare for dep," "Prepare for deposition; telephone conference," "Create summaries," "Prepare for deposition; review file," "Prepare for deposition; notes," "Prepare for deposition," and "Telephone conference;

correspondence." R. 199-2 at 8-9. In total, these entries amount to 29.75 of Glozman's 48.75 claimed hours. R. 199-2 at 9. This leaves Glozman with 19 hours of compensable time.

As to the remainder of defendants' objections, the Court is unpersuaded. With respect to general cuts proposed by defendants, including caps on hours spent on briefs, preparing witnesses, and communications, the Court finds it "unpersuasive for defendants to cavil at plaintiffs' division of labor as purportedly overlapping and inefficient, when defendants' own expenditure of time cannot be evaluated for comparative purposes because they do not account for their own time at all." *Delgado v. Mak*, 2009 WL 211862, at *5 (N.D. Ill. Jan. 29, 2009); *see also O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007) (rejecting excessiveness challenge where "the City has offered no objective standard, no reasonable number of hours to spend on a given activity, with which to compare [plaintiff's counsel's] records"); R. 191-2 (email from defendants' counsel explaining that they do not keep time records).

In particular, the Court does not find Adamik's counsel's practice of dividing work on briefs among several attorneys to be inherently objectionable. Collaborating is not the equivalent of duplicating. Robison and Dalton were entitled to divide up portions of briefs instead of drafting entire briefs themselves. And the time Robison and Dalton spent on those briefs was reasonable in light of their length and complexity. *Compare* R. 195 at 34 *with* R. 94 (40.2 hours drafting 35 pages of contested motions in limine) *and* R. 105 (46.25 hours drafting 36 pages of responses to defendants' motions in limine) *and* R. 169 (60.66 hours drafting 36-page response

17

to defendants' motion for a new trial). The Court also finds that with Adamik's agreed withdrawal of hours Robison spent communicating with his spouse at Loevy & Loevy (R. 199 at 3 n.2) and the elimination of the vague communications-related entries discussed above, the amounts billed for communications are reasonable.

Defendants further object to time spent by De Leon, Glozman, and Tomlinson on administrative or clerical tasks, including all of the hours spent by De Leon and Glozman as law clerks. Defendants point to cases finding that "time spent organizing file folders, preparing documents, assembling filings, electronically filing documents, sending materials, docketing or logging case events into an internal tracking system, and telephoning court reporters" to be "noncompensable." *E.g.*, *Morjal v. City of Chicago*, 2013 WL 2368062, at *2 (N.D. Ill. May 29, 2013) (collecting cases).

On reply, Adamik agreed to withdraw or reduce certain entries for De Leon, Glozman, and Tomlinson, conceding that they were for noncompensable, administrative tasks. *See* R. 199 at 3; R. 199-2 at 4-9. With these adjustments, which the Court has thoroughly reviewed, the Court finds the hours billed appropriate. The Court declines defendants' request to eliminate all hours performed by De Leon and Glozman as law clerks as improper on-the-job training. "Law clerk time is compensable as a general matter," and "the use of law clerks in lieu of another attorney is actually a more economical choice." *Dupuy*, 648 F. Supp. 2d at 1024; *see also, e.g.*, *Smith*, 2015 WL 5675376, at *6 (including law clerk time in fee award); *Reid*, 2015 WL 3653318, at *19 (same). Defendants do not provide support for entirely discounting this work.

18

Finally, the Court declines to make fee reductions simply because entries are block-billed. *See Bd. of Trustees*, 2016 WL 4397972, at *5 ("'Although 'block billing does not provide the best possible description of attorneys' fees, it is not a prohibited practice.'") (quoting *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006)). And the Court finds that the tasks defendants identify as unrelated to the litigation (R. 195 at 36-37) are sufficiently related to be recoverable.

* * *

The Court calculates the lodestar as follows: (1) for Genson 69.75 hours at a rate of $495 ($34,526.25 in total); (2) for Dalton, 753.93 hours at a rate of $310 and 17.1 hours at a paralegal rate of $100 ($235,428.33 in total); (3) for Robison, 274 hours at a rate of $350 and 2 hours at a paralegal rate of $100 ($96,100 in total); (4) for Glozman, 19 hours at a rate of $100 per hour ($1,900 in total); (5) for Tomlinson, 57.5 hours at a rate of $250 per hour and 1.5 hours at a paralegal rate of $100 per hour ($14,525 in total); and (6) for De Leon, 42 hours at a rate of $100 per hour ($4,200 in total). *See* R. 199-1 (adjusted joint statement). Adding all of these totals together results in a lodestar calculation of $386,679.58.

## II. Downward Lodestar Multiplier

Defendants argue that the lodestar should be adjusted downward by 33% to account for Adamik's relative degree of success. Adamik responds that this argument is waived and that any lodestar reduction is inappropriate. The Court first addresses Adamik's waiver argument, and then turns to the merits of defendants' argument.

19

### A.    Waiver

Adamik contends that defendants waived their downward lodestar multiplier argument by raising it for the first time in response to Adamik's fee petition. Adamik relies on cases interpreting Local Rule 54.3(d), which requires the parties to "confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion." L.R. 54.3(d); R. 199 at 7. But that rule focuses on "the time and work records on which the motion will be based," the "hourly rates that will be claimed," and the "evidence that will be used to support the related nontaxable expenses to be sought." L.R. 54.3(d)(1)-(3). The rule specifies that after an exchange of information, "the parties shall specifically identify all hours, billing rates, or related nontaxable expenses (if any) that will or will not be objected to" and "the basis of any objections." L.R. 54.3(d).

In other words, the local rule is meant to address specific lodestar-calculation-related objections. *See, e.g.*, *Sears, Roebuck & Co. v. Menard, Inc.*, 2004 WL 2423964, at *1 (N.D. Ill. Sept. 23, 2004) (Local Rule 54.3(d) is designed to focus on "discrete objections to specific items in the fee petition" in order to "reduc[e] the time spent on fee disputes"). The cases on which Adamik relies find specific fee-entry objections waived based on Local Rule 54.3(d). They do not find overarching arguments for lodestar adjustments waived on this basis. *See Ratliff v. City of Chicago*, 2013 WL 3418070, at *5 (N.D. Ill. July 8, 2013); *Sommerfield v. City of Chicago*, 2012 WL 5354987, at *8 (N.D. Ill. Oct. 29, 2012), *aff'd*, 863 F.3d 645 (7th Cir. 2017); *Nilssen v. Gen. Elec. Co.*, 2011 WL 633414, at *7-9 (N.D. Ill. Feb. 11, 2011); *Sears*, 2004 WL

2423964, at *1; *see also Delgado v. Mak*, 2009 WL 211862, at *4 (N.D. Ill. Jan. 29, 2009) (rejecting waiver argument with respect to "specific tasks or fee entries" because "in the briefing on the fee petition, both parties have had ample opportunity to state and elaborate on their positions and Plaintiff, as the moving party, had the last word").

In any event, defendants did "reserve the right to request that the fee award be adjusted in light of Plaintiff's limited success" in their Joint Fee Statement Pursuant to Local Rule 54.3. R. 190 at 2 n.2. The argument is not waived.

### B.    Merits

"[T]here is a strong presumption that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 554. But that presumption can be overcome when "the lodestar does not adequately take into account a factor that may properly be considered in determining a fee." *Id.* "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436).

In civil rights cases in particular, "the range of possible success is vast," and the plaintiff's "prevailing party" status "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Hensley*, 461 U.S. at 436. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440.

In arguing for a 33% degree-of-success reduction, defendants focus on the fact that Adamik prevailed on only two of his six claims. But as Adamik points out, the

Supreme Court has made clear that when claims are interrelated, a fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435; *accord Jaffee v. Redmond,* 142 F.3d 409, 413 (7th Cir. 1998) ("*Hensley* makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent pursuant to an unsuccessful claim may be compensable if it also contributed to the success of other claims."). The Court finds Judge Dow's analysis in *Ratliff* very instructive in this regard. Like in *Ratliff*, "all of [Adamik's] claims had their genesis in a relatively brief interaction between Defendant Officers and [Adamik]." 2013 WL 3418070, at *3. This case, like *Ratliff*, is thus "an exemplar of the cases in which 'the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories,' such that 'much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" *Id.* (quoting *Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir. 1988)). In such cases "the district court should focus on the significance of the overall relief obtained by the plaintiff." *Ustrak*, 851 F.2d at 988.

As Judge Dow explained in *Ratliff*, it is not unusual for courts to award fees that exceed, even significantly, the amount of the judgment. 2013 WL 3418070, at *3 (citing *Robinson v. City of Harvey,* 489 F.3d 864, 872 (7th Cir. 2007) (affirming $507,000 fee award on $275,000 verdict); *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.,* 223 F.3d 585, 592 (7th Cir. 2000) (affirming $391,000 fee award on $137,000 verdict). Indeed, the Seventh Circuit has expressly "rejected the notion that fees must be calculated proportionally to damages." *Anderson v. AB Painting &*

*Sandblasting, Inc.*, 578 F.3d 542, 547 (7th Cir. 2009). Instead of focusing on the proportionality between the fees requested and the damages awarded, "[c]ourts frequently attempt to measure success by viewing three factors: (i) the difference between the actual judgment and the recovery sought, (ii) the significance of the legal issues on which the plaintiff prevailed, and (iii) the public interest at stake in the litigation." *Ratliff*, 2013 WL 3418070, at *2 (citing *Connolly v. Nat'l Sch. Bus. Serv., Inc.,* 177 F.3d 593, 597 (7th Cir. 1999)).

With respect to the first factor, as defendants emphasize, Adamik ultimately obtained only $92,200.91 of the $200,000 to $300,000 he asked the jury to award him in compensatory damages. And Adamik obtained punitive damages against only two of the three defendants, with the jury finding against him on both his claims against Motyka. The Court finds this to be a moderate-to-good level of success. Like in *Ratliff*, "[a]lthough the jury clearly believed that [Adamik] was wronged, [Adamik's] estimation of the damages significantly exceeded the jury's estimation of damages." *See id.* at *4.

Turning to the second and third factors, like Judge Dow in *Ratliff*, the court finds both "the legal issues on which [Adamik] prevailed and the public interests at stake in this litigation . . . significant." *See id.* As the Supreme Court explained in *City of Riverside v. Rivera,* 477 U.S. 561 (1986), particularly "in the area of individual police misconduct, where injunctive relief is generally unavailable," "the damages a plaintiff recovers contribute significantly to the deterrence of civil rights violations in the future." *Id.* at 575.

23

The Court turns to a weighing of all three factors together, mindful of the fact that "[n]o algorithm is available for adjusting a lodestar to reflect partial or limited success." *Montanez*, 755 F.3d at 556. The Court has "broad discretion to determine the appropriate," "across-the-board" degree-of-success reduction, *id.*, but at the same time, the Court "must justify its decision" through an "explanation . . . rather than a mere conclusory statement." *Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010). Applying these principles, the Court finds that Adamik's counsel should recover 75% of their lodestar. Like in *Ratliff*, Adamik's counsel obtained a "moderate-to-good" result in a fairly routine (but important) civil rights case that fell substantially short of the full recovery requested of $200,000 to $300,000 in compensatory damages and punitive damages against all three defendants. *Compare Ratliff*, 2013 WL 3418070, at *2-4 (awarding 75% of lodestar where plaintiff obtained a good recovery of $50,000, but it fell far short of the pre-trial demand of $99,000). The Court finds it especially significant that the jury essentially awarded Adamik no compensatory damages for pain and suffering, and instead awarded Adamik only the approximate amount of his medical bills—a rather stunning result given the extensive and graphic testimony of Adamik and his mother about his pain and suffering. But the Court finds that a reduction greater than 25% would be too high in light of the evidence at trial supporting the jury's liability findings and the amount the jury did award.

In support of their request for a greater lodestar reduction of 33%, defendants rely heavily on the Seventh Circuit's decision in *Montanez*. It is true that in *Montanez*, like here, the plaintiff won only two of his six claims and failed "to prevail on the

claims against [one defendant]." 755 F.3d at 556. The Seventh Circuit affirmed the district court's rate and hours reductions as well as a 50% degree-of-success reduction, which ultimately reduced the plaintiff's counsel's fees from $426,000 requested to $108,350.87 awarded. *Id.* at 551-57. As Adamik correctly points out, however, the plaintiff's recovery in *Montanez* was far more minimal than in this case (only $2,000 total). *Id.* at 551. The Seventh Circuit explained that the district court properly found that the lodestar was not "a satisfactory basis for making a fee award" in light of this limited recovery. *Id.* at 557. Adamik's degree of success in this case was more significant than in *Montanez*, making a commensurate reduction inappropriate.

In support of Adamik's argument that his attorneys are entitled to a fully compensatory fee, he relies heavily on *Degorski v. Wilson*, 2014 WL 6704561 (N.D. Ill. Nov. 26, 2014). But in that case, "the total fees sought by Plaintiff's counsel [we]re less than $200,000," which was "less than half of the $451,000 jury verdict received by Plaintiff." *Id.* at *3. The court found the "fact that Plaintiff was awarded substantially more than counsel" requested to "weigh[ ] heavily in favor of approving the full lodestar amount," and further found that "Plaintiff achieved an outstanding degree of success after a four-day trial." *Id.* at *4. That is not the situation here for the reasons already explained.

Adamik further argues that other factors set forth in *Hensley* for evaluating whether to reduce or enhance a lodestar—including the "time and labor required," the "skill requisite to perform the legal service properly," and the "novelty and

difficulty of the questions" (*Hensley*, 461 U.S. at 430 n.3)—weigh against a downward adjustment in this case. But the Court rejects Adamik's position that this case was abnormally labor- or skill-intensive, novel, or difficult—at least in a way not already "subsumed in the lodestar" calculation. *See Perdue*, 559 U.S. at 543 ("the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee," and "the case's novelty and complexity" and the "quality of an attorney's performance" are generally "subsumed in the lodestar calculation"). Factually, this case involved a single unprovoked attack that lasted at most minutes. Mental health issues on the part of the plaintiff and medical causation issues often arise in excessive force cases like this one. Legally, although there were nuances that made this case somewhat more complicated than the average excessive force case, including collateral estoppel issues, it involved no novel legal questions.

Adamik argues that this case was made more complex and labor-intensive by defendants' litigation tactics, which Adamik characterizes as "aggressive[ ]" and fighting Adamik "at every turn." R. 191 at 3. The Court has carefully reviewed the docket to assess the entirety of the case—including portions of the case that occurred before the case was transferred from Judge St. Eve to this Court—and does not find Adamik's characterizations to be accurate.

A review of the docket shows that on June 27, 2012, after the defendants were served, this case was stayed pending the resolution of Adamik's criminal case. R. 12. The delay because of the stay was not the fault of defendants. The stay was lifted on Adamik's unopposed motion on August 28, 2012. R. 15. Defendants answered the

complaint, and after Adamik's counsel failed to appear at an October 23, 2012 status conference, the Court noted that failure to appear at future hearings may result in dismissal for failure to prosecute. R. 19. At another status on December 10, 2012, Adamik's counsel again failed to appear. R. 22. Defendants moved for entry of a confidentiality order and a qualified HIPPA order, and in a written brief filed on December 14, 2012, Adamik objected to portions of the proposed order. R. 24. On December 17, 2012, Judge St. Eve entered defendants' proposed orders with some modifications. R. 26. Having reviewed the modifications, which in the end were modest, the Court does not believe defendants can be fairly accused of engaging in scorched-earth tactics. The December 17, 2012 hearing transcript indicates an equal opportunity exchange, which apparently followed negotiations in which each side wanted something. R. 32. Neither side appeared unreasonable.

On January 14, 2013, the case was transferred to this Court. R. 27. On January 31, 2013, defendants moved to extend the fact-discovery cutoff with no objection by Adamik (R. 29), which this Court granted (R. 31). On February 3, 2013, Adamik filed a motion for a protective order to prevent Adamik's mental health and substance abuse records from being disclosed to defendants without the Court first reviewing them in camera—a motion the Court granted. R. 35. The Court then reviewed certain records in camera and ordered some but not others to be produced on April 15, 2013. R. 38. The Court granted in part Adamik's motion to reconsider and made some modifications to its April 15 order on July 1, 2013. R. 47.

Significantly, following the close of discovery, defendants chose not to file a knee-jerk summary judgment motion, which showed discretion and kept the costs down. Prior to trial, both sides filed roughly the same number of pages of motions in limine. R. 94; R. 95. And both sides had approximately the same number of exhibits at trial. R. 199 at 5 n.5.

In sum, it is an overstatement to say, as Adamik does, that defendants over-litigated the case and fought him at every turn. The litigation history of the case does not alter this Court's assessment that a 25% lodestar reduction is appropriate to account for the degree of success achieved.[3] Multiplying the lodestar of $386,679.58 by .75 to account for this downward adjustment results in total fees of $290,009.69.

## III. Prejudgment Interest

Adamik also appropriately seeks prejudgment interest to account for the time between 2016 when he filed the fee petition (*i.e.*, the year based on which the attorneys' current rates were calculated) and today. *See Dupuy*, 648 F. Supp. 2d at 1018-19 ("Two years have passed since Plaintiffs initially moved for fees, and Plaintiffs seek interest on their fee award to account for the passage of time" between when the fee petition was filed—based on which current rates were calculated—and the time of the Court's judgment). As in *Dupuy*, "[t]he [C]ourt rejects Defendant[s'] argument that no interest should be awarded" because "the time value of money

---

[3]     Nor does the Court find credible Adamik's claim that his case was undesirable or that he had a hard time securing counsel. The testimony in this case instead supported that Genson is a close friend of the Adamik family who had previously represented Adamik, making his firm a natural choice. *See, e.g.*, R. 195-11 at 3-4.

dictates that a [2018] award based strictly on [2016] rates would undercompensate Plaintiff[ ].” *Id.* at 1018; *see also In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 571 (7th Cir. 1992) (when the court uses current rates, it “must be sure to make some provision for the interval between the ‘current’ period and the date the lawyers actually receive their money”).

The Court applies “federal common law to determine the appropriate rate to apply for prejudgment interest.” *Dupuy*, 648 F. Supp. 2d at 1018 (citing *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.,* 874 F.2d 431, 437 (7th Cir. 1989)). “The Seventh Circuit has endorsed the use of th[e prime] rate,” or “the rate banks generally charge to their most creditworthy customers,” as a “‘reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default.’” *Id.* (quoting *Gorenstein*, 874 F.2d at 436). Because the Court has based the lodestar calculation on 2016 rates, it “will award interest on [Adamik’s] fee award at the annual average of the prime rate, compounded annually,” for all of 2017 and the seven months and 25 days (206 total days) that have passed in 2018. *See, e.g.*, *id.* (using “current” attorney rates from 2007 when the fee petition was filed to calculate the lodestar, and awarding prejudgment interest “for 2008 and seven months and thirteen days in 2009” that had passed between 2007 and the court’s decision). The Court uses the median prime rate in 2017 of 4.25% and the median prime rate so far in 2018 of 4.75%. *See* http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm.

Multiplying the fee total of $290,009.69 by .0425 to account for the 2017 prime interest rate results in a total of $12,325.41 in interest for 2017. Adding $12,325.41 in interest for 2017 to the fee total of $290,009.69 results in a total of $302,335.10 as of the end of 2017. Multiplying $302,335.10 by .0475 to calculate the amount of compound interest appropriate for all of 2018, and then multiplying that amount by .56 to account for the portion of the year that has passed so far, results in $8,042.11 in interest for 2018. This brings the total fee award to $310,377.21.

## IV.    Motion to Supplement

Finally, the Court turns to Adamik's motion for supplemental attorneys' fees of $60,257.20 for preparing "post-trial motions, Fee Petition, Bill of Costs, and yearlong mediation in the Seventh Circuit." R. 239 at 2. Adamik's motion does not fully brief its counsel's entitlement to these fees. Instead, it represents that "the parties have not been able to complete the requirements of L.R. 54.3(d)-(e)" because defendants' counsel have refused to cooperate. R. 239 at 2-3. As a result, the Court has been presented with a one-sided request for supplemental fees without defendants' objections.

Because it is well-established that a prevailing plaintiff in a civil rights case may recover fees-on-fees (*e.g.*, *Ustrak*, 851 F.2d at 987-90), the Court grants Adamik's motion (R. 239) in principle and finds that his counsel is entitled to at least some of the fees described in the motion. The Court gives the parties 56 days to meet and confer as prescribed by L.R. 54.3(d)-(e), and orders defendants to fully cooperate in the process. Hopefully, the guidance provided by this opinion will allow the parties to

reach agreement as to the supplemental attorney's fees request. If not, Adamik should file a petition for supplemental attorney's fees on or before October 1, 2018. Defendants should file a response on or before October 15, 2018. Adamik should file a reply in support of its petition on or before October 22, 2018.

## Conclusion

For the foregoing reasons, the Court grants Adamik's petition [191] in part, and awards Adamik's counsel $310,377.21 in fees, including prejudgment interest. The Court also grants Adamik's motion to supplement [239]. If the parties are unable to reach agreement on the supplemental fee request as part of the meet-and-confer process prescribed by L.R. 54.3(d)-(e), Adamik should file a petition for supplemental attorney's fees on or before 10/1/2018. Defendants should file a response on or before 10/15/2018. Adamik should file a reply in support of its petition on or before 10/22/2018.

ENTERED:

_Thomas M. Durkin_

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: July 25, 2018